## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | Chapter 11 |
| HIAWATHA MANOR ASSOCIATION, INC., | Case No. 25-01916 |
| Debtor. | Hon. Randal S. Mashburn |
| HIAWATHA MANOR ASSOCIATION, INC., | |
| Plaintiff, | |
| v. | Adv. Pro. 2:25-ap-90051 |
| CHARLES H. ABERNATHY, et al., | |
| Defendants. | |

## LINDA SIMMONS' OBJECTION TO
## HIAWATHA MANOR ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Linda Simmons respectfully submits this Objection to Hiawatha Manor Association's (the "Debtor") Motion for Summary Judgment. The Debtor seeks authority under 11 U.S.C. § 363(h) to compel the sale of co-owned property. Section 363(h) is a conjunctive statute, and the Debtor bears the initial burden of producing competent evidence establishing each statutory element. On the present record, the Debtor has not satisfied even the first requirement.

Summary judgment is improper because the Debtor has not produced admissible evidence demonstrating that partition in kind is impracticable under § 363(h)(1). Rule 56(c) requires the movant to support its motion with materials that would be admissible in evidence, but the Debtor offers no analysis of the physical, legal, or operational feasibility of partition and

1

relies instead on conclusory assertions. Documents cited in the supporting declaration have not been produced, and the record contains internal inconsistencies that preclude a determination, as a matter of law, that partition in kind cannot be accomplished. As Mr. Ingram testified at the §341 Meeting of Creditors, "the biggest challenge we have is the lack of historic records from the former management company," and the Debtor "put together all the records to the best of our ability." (Ex. 5, MOC Tr. 11:16-17).

The evidentiary deficiencies extend to the remaining statutory elements. Key governing instruments, ownership records, operational agreements, and other materials referenced in the Debtor's sworn filings are absent from the record. The curated data room and the restrictions imposed by the Protective Order prevent independent verification of the Debtor's factual assertions. Under Rule 56(d), summary judgment cannot be granted where essential discovery remains outstanding and the non-movant lacks access to the materials the movant relies upon.

The Debtor's unified-sale theory also depends on ownership interests in Hiawatha Manor West, yet Hiawatha Manor West Association, Inc. is not a party to this adversary proceeding. The Debtor asks the Court to assume the validity and legal effect of a transfer involving a non-party, and to rely on that assumption to satisfy elements of § 363(h). Summary judgment cannot rest on unadjudicated authority or the rights of entities not before the Court.

Because the Debtor has not met its burden of production under § 363(h), and because the record contains unresolved factual disputes, missing documents, and internal contradictions, the Court cannot conclude, on this record, that partition in kind is impracticable or that the Debtor has satisfied the remaining statutory requirements. Summary judgment must therefore be denied.

Section 363(h) authorizes extraordinary relief because it permits the forced sale of co-owned property and the extinguishment of non-debtor property rights. Courts therefore require strict proof of each statutory element, supported by competent evidence, before such relief may be granted. Where the movant fails to produce admissible evidence establishing every element, or where material factual disputes remain, § 363(h) relief is unavailable as a matter of law.

## SUMMARY OF ARGUMENT

Summary judgment is improper because the Debtor has not met its burden under Rule 56. The Debtor has not established authority to act on behalf of the co-owners, and the record contains no governance documents identifying who held that authority or how it was exercised. The Debtor's ownership assertions are unsupported, internally inconsistent, and contradicted by its own filings, including the introduction of a new ownership theory in the summary-judgment brief that does not appear in the Complaint or the supporting affidavit.

The Debtor relies on governing documents, ownership records, contracts, and the 70-week transfer deed, yet none of these materials appear in the summary-judgment record. The Debtor's schedules also omit mandatory governance-related disclosures, including Directors and Officers (D&O) insurance and indemnification rights, leaving the Court without the information necessary to evaluate who had authority to execute disputed transfers or whether the Debtor's ownership narrative is reliable. These omissions render the record incomplete under Rule 56(c)(2) and (d).

The Debtor's sworn statements contain procedural and factual inaccuracies, including the incorrect assertion that no Defendant filed an Answer (Doc. 11), further undermining the reliability of the summary-judgment materials. The Debtor has also submitted no admissible

3

valuation evidence to support its claim that a § 363(h) sale will maximize value. The Krakovsky affidavit offers only conclusory statements unsupported by appraisal, expert analysis, or market data.

The Debtor's own filings assert that the East and West properties are "intertwined" and must be sold through a unified process. Because the Debtor relies on this combined structure to satisfy its theory under § 363(h), defects in the West ownership record, including the defective 70-week transfer deed and the fact that West is not a defendant in the Carrara adversary even though the Debtor seeks to extinguish West's property rights there, create material factual disputes that preclude summary judgment in this adversary proceeding.

Because the record is incomplete, internally inconsistent, and unsupported by admissible evidence, the Debtor has not demonstrated the absence of genuine disputes of material fact, and summary judgment must therefore be denied.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056. The moving party bears the initial burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. If that burden is met, the nonmovant must then demonstrate the existence of a genuine dispute, and all reasonable inferences must be drawn in favor of the nonmoving party.

Rule 56(c)(2) permits a party to object that material cited by the movant "cannot be presented in a form that would be admissible in evidence." The movant must therefore support its motion with evidence capable of being presented in admissible form at trial. Unsupported

assertions, internally inconsistent statements, and documents not produced in discovery do not satisfy this burden.

Rule 56(d) further provides that when a nonmovant "cannot present facts essential to justify its opposition," the Court may deny the motion or defer consideration to allow necessary discovery. Where the movant relies on documents that have not been produced, or where access to those documents is restricted in a manner that prevents meaningful examination or use, Rule 56(d) precludes summary judgment.

## ARGUMENT

### A. THRESHOLD AUTHORITY AND GOVERNANCE DEFECTS PRECLUDE SUMMARY JUDGMENT

1. Before the Court may reach the merits of the Debtor's request for relief under § 363(h), the Debtor must establish that it had authority to initiate this adversary proceeding and to execute the transactions on which its claims depend. The present record does not permit such a finding. The Debtor has failed to demonstrate authority across multiple independent dimensions, including the absence of governing instruments, missing mandatory disclosures, defects in the execution and recordation of the disputed 70-week transfer, lack of board authorization, and internal inconsistencies within its own filings. These unresolved authority and governance defects are not technical or collateral; they go to the Debtor's standing to seek extraordinary relief affecting co-owned property. Because these threshold issues remain disputed and unsupported by competent evidence, summary judgment is precluded without regard to the Debtor's arguments under § 363(h).

5

## I. The Debtor Has Produced No Governance Documents Identifying Who Holds Authority

2.     The Debtor seeks extraordinary relief under § 363(h) but has produced no governing instruments identifying who holds authority to act on behalf of the Association or how such authority was exercised. The record contains no bylaws, no board resolutions, no minutes, no delegations of authority, and no evidence of who authorized the initiation of this adversary proceeding *(See Ex. 1, Debtor's Corporate Disclosures and Schedules (selected pages))*. Without these foundational documents, the Court cannot determine whether the Debtor had authority to file the Complaint, execute disputed transfers, or pursue a forced sale of co-owned property. This threshold defect alone precludes summary judgment.

## II. The Debtor's Schedules Omit Mandatory Governance-Related Disclosures (including D&O Insurance and Indemnification Rights)

3.     The Debtor's schedules omit Directors and Officers (D&O) insurance, indemnification rights, and other governance-related disclosures required under the Bankruptcy Rules *(See Ex. 1)*. These omissions deprive the Court of information necessary to evaluate who had authority to execute deeds, authorize litigation, or bind the Association. The absence of these disclosures further undermines the reliability of the Debtor's authority narrative and creates additional factual disputes that cannot be resolved on summary judgment.

## III. The Debtor Has Not Demonstrated Authority for the Execution of the Disputed 70-Week Transfer

4.     The Debtor relies on a purported transfer of 70 timeshare weeks from Hiawatha Manor West Association to establish ownership interests necessary to pursue a unified liquidation *(See Ex. 2, 70-Week Transfer Deed)*. Yet the record contains no power of attorney, no board resolution, and no governance document establishing that the individual who executed this

transfer had authority to act on behalf of Hiawatha Manor West Association, nor is any power of attorney recorded with the Cumberland County Register of Deeds.

5.      The transferor of the 70 intervals, Hiawatha Manor West Association, Inc., is not a party to this adversary proceeding. The Debtor nevertheless relies on that transfer to establish both ownership and authority. Because the legal effect of the transfer has not been adjudicated and the transferor is not before the Court, the Debtor cannot rely on that transaction as an undisputed factual predicate for summary judgment.

6.      Because the Debtor has made this unadjudicated transfer a predicate fact in support of summary judgment, the Court cannot treat that transaction as undisputed without adjudicating the rights of a non-party. The Debtor itself has placed the January 8, 2025 transfer at issue in both adversary proceedings by relying on it as a factual predicate for ownership and authority, and the Court cannot treat the same unadjudicated transaction differently in parallel proceedings.

**IV.     The Debtor Has Not Shown Board Authorization for the Acquisition of the 70 Weeks**

7.      Separately, the record contains no board-level financial analysis, resolution, or governance record showing that the Debtor, Hiawatha Manor Association, Inc., authorized or approved the acquisition of the additional 70 weeks. The absence of any such authorization is particularly significant where the Debtor simultaneously asserts that it could not sustain operations under the pre-transfer ownership structure, yet undertook an acquisition that increased its maintenance-fee obligations and operational burden. Nothing in the record indicates that the Debtor's board evaluated whether this acquisition would benefit the estate or assessed its financial impact on the Debtor's operations. These governance failures at both the transferor and

Case 2:25-ap-90051    Doc 48    Filed 03/03/26    Entered 03/03/26 16:33:47    Desc Main
Document     Page 7 of 25

transferee levels create genuine disputes of material fact regarding the validity of the transfer and the ownership interests on which the Debtor's claims depend.

**V.      The Deed Evidencing the 70-Week Transfer Contains Facial Execution Defects**

8.      Even apart from the absence of authority at both the transferor and transferee levels, the deed evidencing the 70-week transfer contains multiple facial execution and recordation defects that independently preclude summary judgment. The notary acknowledgment purports to authorize the signer as agent of the Debtor, the Grantee, while the deed is executed as agent of the Grantor, Hiawatha Manor West Association. The affidavit of consideration is dated one year prior to the deed's execution and recording. These internal inconsistencies and recordation defects create a genuine dispute of material fact as to whether the transfer was validly executed and recorded, and therefore whether the Debtor holds the ownership interests on which its unified sale strategy relies.

**Table 1: Defects in the 70-Week West-to-East Deed Relied Upon for the Unified Sale**

| Issue | Defect |
| --- | --- |
| Notary Acknowledgement | The acknowledgement purports to authorize the signer as agent of the Debtor (Grantee), while the deed is executed as agent of the Grantor, Hiawatha Manor West Association. |
| Execution Authority | No POA on file with the Cumberland County Register of Deeds. |
| Affidavit of Consideration | Affidavit is dated one year prior to execution and recording. |

As shown above, defects in the execution and recordation of the 70-week transfer deed create a genuine dispute of material fact as to the authority and ownership on which the Debtor's unified sale strategy depends.

**VI.** **The Debtor's Own Filings Create Additional Authority-Related Inconsistencies**

9.     The Debtor's own filings contain internal inconsistencies regarding who controls the Association, who executed key documents, and who authorized the initiation of this adversary proceeding. These inconsistencies prevent the Court from determining whether the Debtor has met its burden under Rule 56 to establish authority as a matter of law.

**B. THE DEBTOR HAS NOT MET ITS BURDEN UNDER § 363(h)**

10.     Section 363(h) cannot be applied to extinguish or rely upon property interests held by a nonparty, and because the Debtor's theory depends on ownership interests in Hiawatha Manor West, an entity not before the Court, the motion fails as a matter of law. Section 363(h) imposes four independent requirements, and the Debtor bears the burden of producing admissible evidence establishing each one. The summary-judgment record contains no competent evidence satisfying any of the statutory elements. The table below summarizes the evidentiary deficiencies the Court must consider before reaching the element-by-element analysis.

**Table 2: § 363(h) Elements Compared to Debtor's Evidentiary Showing**

| § 363(h) Element | Required Showing | Evidence Debtor Provided | Evidentiary Deficiency |
| --- | --- | --- | --- |
| (1) Partition impracticable | Competent evidence addressing physical, legal, and operational feasibility of partition | Conclusory assertions about buyer preference and operational convenience | No analysis of partition; no physical or legal feasibility evidence; ownership universe unresolved |
| (2) Sale of undivided interest would realize significantly less | Comparative valuation evidence, appraisal, market data, or broker testimony | General statements that unified sale "maximizes value" | No valuation, no comparison, no quantification; relies on unproven ownership claims |
| (3) Benefit outweighs detriment | Quantified balancing of estate benefits vs. co-owner detriment | Assertions about administrative convenience and owner voting | No detriment analysis; no quantified benefit; ownership and voting rights unresolved |
| (4) Property not used in energy production | Evidence establishing non-use | No evidence cited | Movant bears burden; absence of proof defeats summary judgment |

## C. THE DEBTOR HAS NOT ESTABLISHED THAT PARTITION IN KIND IS IMPRACTICABLE UNDER § 363(h)(1)

11.     The Debtor's Motion fails to establish, as a matter of law, that partition of the co-owned interests is impracticable, as required by 11 U.S.C. § 363(h)(1). Rather than presenting competent evidence addressing the physical, legal or operational feasibility of partition, the Debtor relies on generalized assertions regarding ownership complexity, operational inconvenience, and the supposed preference of hypothetical buyers for a unified sale.

12.     The Debtor's assertion that partition is impracticable also presupposes the validity of its claimed ownership interests in West property, yet those interests depend entirely on the

unadjudicated 70-week transfer. Without a determinate and legally established ownership universe, the Court cannot evaluate partition feasibility as a matter of law.

13.     The Debtor asserts that because the Units are held by multiple tenant-in-common owners and because cash flow at the property is "minimal," it would be unlikely to locate a buyer willing to acquire only the Debtor's undivided interests. These assertions are unsupported by any competent evidence and do not address whether partition in kind is impracticable. Section 363(h)(1) requires more than showing that a consolidated sale may be easier, more profitable, or preferred by the Debtor; it requires proof that partition cannot reasonably be accomplished.

14.     The Debtor offers no analysis of potential partition alternatives, no evidence that any such alternatives were evaluated or attempted, and no testimony explaining why partition of interests, or exclusion of certain interests from a unified sale, would be infeasible as a practical matter. Its reliance on speculative assertions about buyer preferences and financing limitations does not satisfy its burden at the summary-judgment stage.

15.     At most, the Debtor's submissions reflect a preference for a unified sale structure designed to maximize estate value. Preference, however, is not the standard imposed by § 363(h)(1). Because the Debtor has not presented evidence establishing that partition in kind is impracticable, genuine disputes of material fact remain, and summary judgment must be denied.

**D.    THE DEBTOR HAS NOT ESTABLISHED, AS A MATTER OF LAW, THAT SALE OF ONLY THE ESTATE'S UNDIVIDED INTEREST WOULD REALIZE SIGNIFICANTLY LESS VALUE UNDER § 363(h)(2)**

16.     To obtain summary judgment under 11 U.S.C. § 363(h)(2), the Debtor bears the burden of producing admissible evidence establishing, as an undisputed material fact, that sale of

11

only the estate's undivided interests would realize significantly less value than a sale of the Property free and clear of co-owners' interests.

17.     The Debtor has not met that burden. Its summary-judgment papers rely on conclusory assertions that a unified sale is "necessary to maximize value" and that it would be "unlikely" to locate a buyer for the Debtor's undivided interests. These assertions are unsupported by any appraisal, valuation analysis, broker testimony, market data, or evidence of any effort to market the estate's interests.

18.     Assertions regarding buyer preference, financial convenience, or operational simplicity do not establish that sale of the estate's undivided interests would realize significantly less value. Section 363(h)(2) requires comparative proof of value, not speculation or generalized conclusions.

19.     The Debtor offers no evidence quantifying the value of the estate's undivided interests, no comparison of alternative sale structures, and no analysis demonstrating the magnitude of any asserted value differential. In the absence of such evidence, the Court cannot determine, as a matter of law, that § 363(h)(2) is satisfied.

20.     The Debtor's valuation theory further assumes that the estate holds valid, marketable interests in both East and West properties. Because the Debtor has not established the validity or scope of its West interests, the Court cannot determine the value of the estate's undivided interests or compare alternative sale structures under § 363(h)(2).

21.     Because the Debtor has not presented competent evidence establishing that sale of only the estate's undivided interests would realize significantly less value than a unified sale, genuine disputes of material fact remain, and summary judgment must be denied.

12

22.     Even if the Debtor had satisfied § 363(h)(2), which it has not, summary judgment would still be improper because the Debtor has also failed to establish the separate and independent balancing requirement of § 363(h)(3).

**E.     THE DEBTOR HAS NOT ESTABLISHED THAT THE BENEFIT OF A UNIFIED SALE OUTWEIGHS THE DETRIMENT TO CO-OWNERS UNDER § 363(h)(3)**

23.     Section 363(h)(3) requires the Debtor to establish that the benefit to the estate of a sale free of the co-owners' interests outweighs the detriment to those co-owners. This element demands a comparative balancing supported by competent evidence, and conclusory assertions or generalized statements of benefit are insufficient at summary judgment.

24.     The Debtor has presented no quantified analysis demonstrating that a sale free and clear of co-owners' interests would generate greater net proceeds for the estate than a sale of only the estate's undivided interests. Because operating expenses would cease upon any sale, the Debtor must show that extinguishing co-ownership interests itself produces incremental economic benefit sufficient to satisfy § 363(h)(3). The summary-judgment record contains no such comparative showing.

25.     Likewise, the Debtor offers no evidence addressing the specific detriment to co-owners. The record contains no analysis of the impact on use rights, contractual interests, governance rights, or potential post-sale liabilities, including liabilities or obligations arising from undisclosed or unresolved agreements that would be extinguished or reallocated through a unified sale without having been evaluated on the record. The Debtor has not assessed the economic or legal consequences to individual owners whose property interests would be terminated.

26.     The Debtor's reliance on owner voting does not satisfy § 363(h)(3). A vote, standing alone, is not a substitute for the statutory balancing required by § 363(h)(3), which

13

demands evidence that the benefit to the estate outweighs the detriment to co-owners. Any vote-based conclusion also presupposes a determinate ownership universe and valid voting entitlements. The Debtor has produced no admissible evidence establishing which defendants held valid interests or how voting rights were calculated. Where ownership itself remains unresolved, vote-based conclusions cannot be treated as undisputed facts at summary judgment.

27.     The Debtor has also produced no ledger, reconciliation, or financial record accounting for the collection, application, or allocation of $250 deed-back fees or related payments arising from post-petition deed-back transactions. These payments arise from deed-back transactions that affect both ownership and estate value, yet the Debtor offers no documentation explaining how such funds were treated or whether they were retained by the estate, paid to third parties, or otherwise applied. In the absence of this information, the Court cannot evaluate the estate's asserted benefit or meaningfully weigh that benefit against the detriment to co-owners, as required by § 363(h)(3).

28.     Section 363(h)(3) requires more than generalized assertions that a unified sale is operationally convenient or administratively efficient. Because operating expenses would terminate upon any sale, the Debtor must demonstrate that extinguishing co-owners' interests produces incremental net benefit to the estate sufficient to outweigh the resulting detriment to those co-owners. In the absence of such evidence, the statutory balancing required by § 363(h)(3) cannot be resolved as a matter of law.

29.     Because the Debtor has not presented competent evidence supporting the required balancing under § 363(h)(3), genuine disputes of material fact remain, and summary judgment cannot be granted.

30.     Nothing in this objection asks the Court to resolve issues of governance, insider influence, or pre-petition value erosion. The point is narrower: where a forced sale of co-ownership interests is sought under § 363(h), and where the summary-judgment record reflects unresolved questions concerning the estate's financial trajectory and control, the absence of a quantified benefit-to-detriment showing precludes summary judgment as a matter of law.

## F.    THE DEBTOR'S IRRECONCILABLE OWNERSHIP FIGURES AND MISSING FOUNDATIONAL RECORDS PRECLUDE SUMMARY JUDGMENT

### I. The Debtor Has Produced No Evidence Supporting Its Claim That It Owns 1,764 Intervals

31.     Because the Debtor's balancing argument depends on the accuracy of its asserted ownership interest, its claimed ownership figure must be supported by admissible evidence. The Debtor asserts in its Complaint and in the sworn affidavit of Alexander Krakovsky that it owns 1,764 intervals, (¶ 4), but the affidavit provides no underlying documentation or analysis supporting that number. It identifies no ownership ledger, reconciliation, deed list, or calculation showing how the 1,764 figure was derived or what intervals it includes. The affidavit also does not indicate whether the figure accounts for abandoned intervals, deed-backs, transfers, or post-petition changes. Rule 56 requires a movant to support its factual assertions with evidence capable of being presented in admissible form, yet the Debtor offers only an unsubstantiated numerical assertion. In the absence of foundational ownership records, the Court cannot determine, as a matter of law, that the Debtor owns the interests it claims.

32.     The Debtor has not attached a single deed, conveyance, ledger, or recorded instrument showing ownership of either the 1,764 intervals asserted in the Complaint or the "one week in each of 47 units" theory advanced in its summary-judgment papers. Whether the omission reflects that such documents do not exist or simply that the Debtor never undertook the

work to locate them, the result is the same: the Debtor has not met its burden under Rule 56 to establish co-tenancy in each unit as required by § 363(h). The Court cannot assume evidence exists where none has been presented.

33.     The Debtor's filings also give conflicting descriptions of what owners would receive from the proposed sale. The Complaint states that owners' interests "will attach to the sale proceeds" and that the Debtor will propose to "distribute the net sale proceeds" through a plan of liquidation (Complaint ¶ 31). The Krakovsky affidavit (¶ 32), however, asserts that owners "will not have to pay maintenance fees anymore," and identifies no recorded instrument or governing-document amendment that would effectuate that change. These unreconciled representations further underscore that the Debtor has not provided consistent, admissible evidence supporting its factual assertions regarding the consequences of the sale.

## II.     The Debtor Introduced a New and Unreconciled Ownership Theory in Its Summary-Judgment Brief

34.     In its summary-judgment brief, the Debtor abandons the 1,764-interval ownership figure asserted in the Complaint and instead advances a new claim that it owns "at least one interest in each of the 47 units." The Debtor provides no deeds, schedules, or reconciliations supporting either assertion, and offers no explanation showing how the two positions relate to one another or describe the same ownership universe. This shift is particularly significant because the Krakovsky affidavit (¶ 8) asserts that the governing Declarations authorize up to 88 units. The Declarations themselves contain no such authorization, leaving the Debtor's interval count and unit-based ownership claims irreconcilable on the face of its own filings.

## III.     Rule 56 Does Not Permit Shifting Factual Theories

35.     Rule 56 does not permit a movant to shift factual theories at the summary-judgment stage to compensate for evidentiary deficiencies. The Debtor's attempt to

replace its 1,764-interval assertion with a new claim that it owns "at least one interest in each of the 47 units" – a claim that is itself unsupported by any ownership records and is not grounded in any conveyance or recorded instrument in the Declarations – underscores that the Debtor has not met its burden to establish ownership as a matter of law.

36.     Although the Declarations assign two maintenance weeks per unit to the Association, the Debtor never identified maintenance weeks as the basis for its new claim that it owns "at least one interest in each of the 47 units." This theory does not appear in the Complaint or the affidavit and is raised for the first time in the summary-judgment brief. Rule 56 does not permit a movant to shift ownership theories to compensate for missing evidence.

**IV.     The Debtor's Ownership Figures Cannot be Reconciled With the Record**

37.     The Debtor's ownership figures cannot be reconciled with one another or with the governing documents. The Complaint asserts ownership of 1,764 intervals; the summary-judgment brief asserts ownership of "at least one interest in each of the 47 units"; the Krakovsky affidavit asserts that the Declarations authorize up to 88 units – an assertion unsupported by the Declarations themselves – and simultaneously acknowledges that only 41 units remain occupiable. The adversary proceeding names 1,525 defendants. The Debtor has produced no ownership ledger, reconciliation, or documentation explaining how these figures were calculated or how they relate to one another.

**V. The Debtor's Ownership Math is Structurally Impossible**

38.     Even using only the ownership figures reflected in the Debtor's own filings and in the public record, and without any evidence explaining whether or how these categories overlap, the Debtor's ownership narrative cannot be reconciled with the number of intervals that exist. The Debtor claims 1,764 intervals; the public record reflects that Lemonjuice acquired 476

intervals under a deed recorded approximately 70 days before the petition date; and the Debtor identifies 198 "clouders," each representing at least one interval; and the adversary proceeding names 1,525 defendants who, according to the Debtor's own filings, may own or assert interval interests. Taken together, these figures total far more than the 2,444 intervals authorized under the Declaration. The Debtor has provided no reconciliation showing how its asserted ownership figures fit within that universe. Without such a reconciliation, the Court cannot determine, as a matter of law, that the Debtor has established ownership of the interests it claims.

39.     The Debtor's own affidavit further compounds these inconsistencies. The Krakovsky affidavit asserts that approximately 700 interval owners were eligible to vote in the Association election (¶ 22), yet the Debtor has produced no ownership records identifying these owners, no explanation of how this figure relates to its own asserted ownership of 1,764 intervals, and no reconciliation of how these hundreds of additional owners fit within the 2,444-interval universe established by the Declaration. This internal inconsistency further undermines the reliability of the Debtor's ownership assertions.

## VI. The Debtor Has Produced No Evidence Supporting Its Assertion that 88 Units Ever Existed Within the Number Authorized by the Declarations

40.     The Debtor has produced no evidence that any units beyond those shown on the recorded plats and identified in the Declarations were ever created, conveyed, or incorporated into the timeshare regime. The 1979 Declaration created units only in Buildings B, C, D, and E, (Ex. 4, p. 15), and the 1980 Declaration created units only in Buildings K, L, M, N, O, and P (Ex. 4, p. 36). Although certain site plans depict additional building outlines, those structures are not named, numbered or identified as units on Exhibit I to either the 1979 or 1980 Declarations (Ex. 4, pp. 14, 35), as required for a building to become part of the timeshare regime. No

recorded amendment adds any additional clusters or units. The Krakovsky affidavit's assertion (¶ 8) that the Declarations "authorized up to 88 units" is unsupported by any recorded instrument and identifies no mechanism by which the phantom buildings were ever created, platted, or submitted to the regime. Without evidence of creation, conveyance, and incorporation, the Court cannot determine the total number of legally existing intervals or conclude, as a matter of law, that the Debtor owns the interests it claims.

## VII. The Debtor's Shifting Ownership Theories Undermine the Reliability of Its Assertions

41.     The Debtor's shifting ownership theories independently demonstrate a credibility problem, a Rule 56 evidentiary failure, and a standing defect under § 363(h). The Complaint asserts ownership of 1,764 intervals; the Krakovsky affidavit claims the Declarations "authorized up to 88 units"; and the summary-judgment brief advances a new theory that the Debtor owns "at least one" interval in each of 47 buildings. The Debtor identifies no recorded instrument, ownership ledger, or reconciliation supporting any of these positions. The unexplained shifts underscore that the Debtor lacks a stable factual basis for its claimed ownership, cannot satisfy its evidentiary burden under Rule 56, and cannot establish co-tenancy in each unit as required to invoke § 363(h).

## VIII. Public Land Records Do Not Reconcile with the Debtor's Asserted Ownership Figures

42.     A deed reflecting the transfer of 476 intervals to Lemonjuice Capital, LLC was recorded approximately 70 days before the petition date. The Debtor has produced no ownership ledger, reconciliation, or accounting showing whether its asserted figure of 1,764 intervals includes or excludes these 476 intervals. Without evidence demonstrating how this transfer was treated in the Debtor's ownership calculations, the Court cannot determine, as a matter of law, what interests the Debtor actually owns.

43. Public land records further undermine the Debtor's ownership assertions. The Debtor filed its petition claiming ownership of 1,764 intervals as of May 5, 2025. After the petition date, multiple deed-backs to the Debtor were recorded in the Cumberland County, Tennessee Register of Deeds. These post-petition transfers necessarily altered the Debtor's ownership position, yet the Debtor has never updated its asserted ownership figure or produced any ownership ledger or reconciliation showing whether the 1,764 figure included or excluded these intervals. In the absence of such records, the Court cannot determine, as a matter of law, what interests the Debtor actually owns.

**Table 3: Summary of Debtor's Ownership Assertions and Missing Reconciliation**

| Source of Representation | Ownership Figure Asserted | What Is Missing / Unexplained |
|---|---|---|
| Complaint May 5, 2025 | 1,764 intervals | No ledger or deeds |
| Public Land Records (Ex. 3) | | Multiple Post-Petition Quitclaim deed-backs to the Debtor (May-July 2025) |
| Statement of Undisputed Facts Jan. 19, 2026 | 1,764 intervals | No explanation how this unchanged figure accounts for post-petition transfers reflected in public land records; no ownership ledger or reconciliation |

As the foregoing table illustrates, the Debtor's asserted ownership figures remain unreconciled across multiple filings and public records, leaving no evidentiary basis on which the Court can determine ownership as a matter of law.

44. These unresolved discrepancies in the Debtor's ownership assertions also undermine any reliance on service lists as evidence of who holds valid interests.

## IX. Service Does Not Establish Ownership for Purposes of Rule 56

45. The Debtor may argue that it "noticed everyone who might own a week," but service does not establish ownership. Rule 56 requires evidence, not speculation or

over-inclusive notice lists. If the Debtor cannot identify which of the 1,525 defendants actually hold valid interests, it cannot determine who is entitled to sale proceeds or who would be divested by a § 363(h) sale. This uncertainty is not a basis for summary judgment; it is a material factual dispute that precludes it. A movant cannot meet its burden by asserting that the essential facts cannot be determined.

## X. The Debtor's Stated Voting Standard Does Not Correctly Reflect the Requirements of the By-Laws

46**.**     The only evidence the Debtor offers regarding voting requirements is the Krakovsky affidavit, which asserts that the Declarations require 100% of owners to nominate voting representatives before a quorum can be achieved (¶ 9). That assertion is incorrect. The By-Laws incorporated into each Declaration establish a 10% quorum and a majority-vote standard for action (Ex. 4, pp 16-18, 37-39). Voting certificates do not affect the quorum requirement and do not apply to all owners. Voting certificates are required only for units owned by multiple persons or by a corporation and those certificates affect only whether a particular unit's vote is counted, not the quorum for the entire association. Because the affidavit misstates the governing documents, it is not competent evidence under Rule 56(c)(4), and the Debtor has offered no admissible evidence establishing the voting requirements on which its summary-judgment theory depends.

**Table 4: Voting and Quorum Requirements Under the Declarations**

**1979 By-Laws: Ex. 4, p. 16-18**
**1980 By-Laws: Ex. 4, p. 37-39**

| Provisions | Summary of Governing Language |
|---|---|
| Article II, §2(b) Voting Standard | Questions at any regular or special meeting are decided by a majority of the total votes present in person or by proxy, unless otherwise expressly provided. |
| Article II, § 3 (Quorum) | A quorum exists when one-tenth (10%) of the Unit Owners' total votes are present in person or by proxy, unless a different requirement is expressly stated. |
| Article II, § 5 (Voting Certificates) | If no voting certificate is on file for a unit owned by multiple persons or a corporation, that unit's vote is excluded from quorum and voting calculations. |

## XI.     Rule 56(d) Bars Summary Judgment Where Essential Ownership Discovery Has Not Been Produced.

47.     The Debtor's failure to produce the foundational ownership records is not merely an evidentiary defect; it is a procedural bar to summary judgment under Rule 56(d). The Defendant submitted a Rule 56(d) affidavit identifying the specific documents needed to test the Debtor's ownership assertions, including the ownership ledger, reconciliations, deeds, and records accounting deed-backs, abandoned intervals, and the 1,525 defendants. The Debtor has not produced these materials. Because the missing discovery goes directly to the core factual disputes created by the Debtor's shifting ownership numbers, irreconcilable interval counts, and contradictory filings, Rule 56(d) requires the Court to defer or deny summary judgment. A movant cannot withhold essential evidence and simultaneously demand judgment as a matter of law. The missing discovery includes documents necessary to evaluate the authority, execution, and legal effect of the 70-week transfer from Hiawatha Manor West Association, Inc. Because

22

Case 2:25-ap-90051    Doc 48    Filed 03/03/26    Entered 03/03/26 16:33:47    Desc Main
Document      Page 22 of 25

the Debtor relies on that transfer to establish ownership and authority, and because the transferor is not before the Court, Rule 56(d) precludes summary judgment on this record.

48.     Debtor seeks summary judgment based on asserted ownership figures, yet has produced no admissible evidence establishing those figures or permitting them to be tested. Where a movant's own evidentiary showing is incomplete or internally inconsistent, Rule 56 does not permit the Court to assume the missing facts as established.

## G.     The Debtor's Affidavit Does Not Establish Undisputed Facts Under Rule 56

49.     The Debtor's submission styled as the "Affidavit of Alexander Krakovsky" is internally inconsistent and does not satisfy the requirements of Rule 56(c)(4). The document begins with a Tennessee notarial jurat stating that the affiant personally appeared before a notary and was "duly sworn," yet no notarial signature, seal, or execution appears anywhere in the filing. It instead concludes with an unsworn declaration under 28 U.S.C. § 1746. A document that simultaneously purports to be a sworn affidavit and an unsworn declaration is not competent summary-judgment evidence and cannot establish the absence of genuine disputes of material fact.

50.     Even setting aside that procedural defect, the affidavit does not supply competent evidence sufficient to satisfy the statutory elements of § 363(h). It asserts that partition would be impracticable, that a unified sale would yield materially greater value, and that Defendants would benefit from the proposed sale, yet identifies no appraisal, valuation analysis, market data, or comparative assessment supporting those conclusions. Conclusory recitations of statutory elements do not establish undisputed facts under Rule 56.

51.     The affidavit is also internally inconsistent. It repeatedly attributes the Debtor's financial condition to widespread owner "abandonment" (¶ 15), yet elsewhere states that owners

of more than 700 intervals affirmatively participated in and voted on the proposed termination and sale (¶ 22). The affidavit does not reconcile how substantial owner participation can coexist with its characterization of pervasive abandonment. Such unresolved factual tension precludes summary judgment.

## CONCLUSION

For these reasons, the Debtor has not carried its burden under Rule 56. The record contains unresolved factual disputes concerning the authority and legal effect of the January 8, 2025 transfer, and the transferor is not before the Court. Because the Debtor relies on that unadjudicated transaction as a predicate fact in support of summary judgment, the Court cannot treat it as undisputed without adjudicating the rights of a non-party. Summary judgment should therefore be denied.

Dated: March 3, 2026

Respectfully submitted,

/s/ Linda Simmons
Linda Simmons, pro se
9643 Chanteclair Circle
Highlands Ranch, CO 80126
Telephone: (615)594-2866
Email: lindasimmons2866@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2026, I served a true and correct copy of the foregoing Objection to Hiawatha Manor Association's Motion for Summary Judgment via the Court's CM/ECF system on all registered participants, including:

- Blake D. Roth – Counsel for Debtor
- C. Scott Kunde – Counsel for Debtor
- Thomas H. Forrester – Counsel for Lake Tansi Village POA
- Rebecca J. Yielding – Trial Attorney, Office of the U.S. Trustee
- Office of the United States Trustee
- Michael E. Collins – Counsel for Hiawatha Manor West Association, Inc.
- S. Marc Buchman – Counsel for Hiawatha Manor West Association


<u>/s/ Linda Simmons</u>
Linda Simmons
9643 Chanteclair Circle
Highlands Ranch, CO 80126
Telephone: (615) 594-2866