**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIAWATHA MANOR ASSOCIATION, INC., | Case No. 25-01916 |
| Debtor. | Hon. Randal S. Mashburn |
| HIAWATHA MANOR ASSOCIATION, INC., | |
| Plaintiff, | |
| v. | Adv. Pro. 2:25-ap-90051 |
| CHARLES H. ABERNATHY, *et al.*, | |
| Defendants. | |

**DEBTOR'S REPLY TO OBJECTION OF LINDA SIMMONS**
**TO DEBTOR'S MOTION FOR SUMMARY JUDGMENT**
**(HIAWATHA EAST)**

Hiawatha Manor Association, Inc. (the "***Debtor***"), by and through its undersigned counsel, files this reply to *Linda Simmons' Objection to Hiawatha Manor Association's Motion for Summary Judgment* (A.P. Dkt. No. 48) (the "***Simmons Objection***") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. On May 6, 2025, the Debtor filed a voluntary petition for relief in this Court, pursuant to chapter 11 of the Bankruptcy Code, thus commencing the above captioned chapter 11 case.

2. On that same day, the Debtor filed its Complaint initiating the above captioned adversary proceeding (the "***Adversary Proceeding***").

3. On January 19, 2026, the Debtor filed (i) *Hiawatha Manor Association, Inc.'s Motion for Summary Judgment* (A.P. Dkt. No. 39) (the "**Motion for Summary Judgment**"), (ii) *Statement of Undisputed Facts in Support of Hiawatha Manor Association, Inc.'s Motion for Summary Judgment* (A.P. Dkt. No. 40) (the "**Statement of Undisputed Facts**"), *Brief in Support of Hiawatha Manor Association, Inc.'s Motion for Summary Judgment* (A.P. Dkt. No. 41) (the "**MSJ Brief**"), and *Affidavit of Alexander Krakovsky in Support of Motion for Summary Judgment and Entry of Summary Judgment* (A.P. Dkt. No. 42) (the "**Krakovsky Affidavit**", together with the Statement of Undisputed Facts and the MSJ Brief, collectively, the "**Supporting Documents**") whereby it seeks declaratory relief to sell the entire Hiawatha East Property.

4. The Adversary Proceeding involves more than 1,500 defendants, all of whom have been provided notice of the ongoing proceedings at various stages, both through typical, official forms of notice, as well as notice by publication and informal notices provided through the Debtor's website and ordinary course timeshare owner communication methods.

5. Additionally, in accordance with this Court's *Protective Order* (Dkt. No. 86), the Debtor established a data room which contains documents and information responsive to questions raised by parties in interest (the "**Data Room**").

6. Over the last ten months, the Debtor has received dozens of phone calls from defendants and various defendants have attended hearings and status conferences held by the Court (always scheduled and coordinated in a manner to make them easily accessible to defendants), and in no instance has any defendant voiced their objection, formally or informally, to the sale of the Hiawatha East Property until the Simmons Objection.

7. Ms. Simmons herself stated to the Court on January 20, 2026, that she does not object to the sale of the Hiawatha East Property, however, despite her prior statements to the

contrary, she has now filed a formal objection to the Motion for Summary Judgment seeking to stop the sale process.

8. Ms. Simmons stands alone in her objections and the bases upon which she has filed her objections are either unsupported, without merit, contrary to facts reasonably available to her, or a combination of the foregoing, all as set forth below.

**<u>ARGUMENT</u>**

9. Rule 56 of the Federal Rules of Civil Procedure (the "***Federal Rules***"), made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Local Rules of Bankruptcy Procedure 7056-1, a movant may obtain summary judgment by showing that the materials in the record demonstrate no genuine dispute of material fact and entitlement to judgment as a matter of law.

10. The party seeking summary judgment has the initial burden of identifying those portions of the pleadings, affidavits, and other evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

11. Upon satisfaction of this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986).

12. It is not sufficient for a party opposing summary judgment to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

13. Importantly, evidence submitted in opposition to a motion for summary judgment must be admissible. *Alpert v. U.S.*, 481 F.3d 404, 409 (6th Cir. 2007) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 118, 1189 (6th Cir. 1997)).

14.     Here, the Debtor has submitted sufficient admissible evidence to support each and every element for relief under section 363(h) of the Bankruptcy Code, and no party has submitted any admissible evidence to suggest that there are genuine issues of material fact warranting a trial.

**I.      The Debtor has submitted admissible evidence in support of the elements required for relief under 363(h).**

15.     Under section 363(h) of the Bankruptcy Code, a debtor may sell both the estate's interest and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common if:

    a.      partition in kind of such property among the estate and such co-owners is impracticable;

    b.      sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

    c.      the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

    d.      such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

16.     As set forth in the Motion for Summary Judgment and the Supporting Documents, the Debtor meets each of the above required elements.

17.     With respect to the impracticability of partition in kind, the Debtor has provided admissible evidence that:

    a.      The Hiawatha East Property consists of a 47-unit development located at 8005 Cherokee Trail, Crossville, Tennessee 38572 (Dkt. No. 42, ¶ 4);

    b.      The Hiawatha East Property is organized under Tennessee's Horizontal Property Act by a Declaration recorded on or about July 11, 1979, followed an additional Declaration for "Hiawatha Manor I" recorded on or about October 27, 1980 (Dkt. No. 42, ¶ 7);

    c.      The Hiawatha East Property's units are subdivisible into weekly intervals (Dkt. No. 42, ¶ 8);

d. The Debtor owns 1,765 intervals in the Hiawatha East Property (Dkt. No. 42, ¶ 4); and

e. Although the declarations regarding the Hiawatha East Property reference 88 units, multiple buildings no longer physically exist; however, the removed buildings continue to appear in the recorded documents as if they did exist, complicating any ability to conduct votes necessary to sell the property (Dkt. No. 42, ¶ 9).

18. With respect to the impact of selling the Debtor's undivided interests alone versus selling the entire Hiawatha East Property together:

a. the Debtor and Debtor's marketing professionals believe a sale of the entire Hiawatha East Property could yield a purchase price of approximately $3,000,000 as a conservative estimate (Dkt. No. 42, ¶ 27); and

b. by comparison, the individual units' value is reflected by the reality that: (i) many tenants in common have walked away from their interests or transferred them to timeshare relief companies (Dkt. No. 42, ¶ 18); and (ii) revenue at the Hiawatha East Property is not sufficient to cover monthly operating and maintenance costs, debt service, and ad valorem taxes owed to local taxing authorities (Dkt. No. 42, ¶ 21).

19. With respect to the benefits to the Debtor versus the burden to the co-owners, only Ms. Simmons has objected to the relief sought and the Debtor has set forth that any sale will **<u>benefit</u>** co-owners, as they will receive net sale proceeds, ongoing liabilities for assessments will stop, and the Debtor has no intention of pursuing delinquencies for unpaid maintenance fees. (Dkt. No. 42, ¶ 32.)

20. Finally, it goes without saying that the Debtor is not involved in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

21. All of the foregoing declarations are made upon the personal knowledge of Alexander Krakovsky or upon (a) relevant documents and information supplied to Mr. Krakovsky by people who report to him or are officers or employes of the Debtor, (b) information supplied to Mr. Krakovsky by the Debtor's professionals, or (c) Mr. Krakovsky's experience and knowledge with respect to the Debtor's business, finances, and operations.

22. Based upon the foregoing, the Debtor has submitted admissible evidence supporting each and every element for relief under section 363(h) of the Bankruptcy Code and demonstrated the Debtor is entitled to judgment as a matter of law.

23. Therefore, the burden shifts to any nonmoving party to set forth admissible evidence refuting the elements required for relief under section 363(h) of the Bankruptcy Code.

**II. Ms. Simmons has failed to provide any admissible evidence demonstrating a genuine issue of material fact warranting a trial in this adversary proceeding.**

24. As a starting point, Ms. Simmons has not provided **any admissible evidence contesting the Motion for Summary Judgment.**

25. Instead, Ms. Simmons attaches her own affidavit (the "***Simmons Affidavit***") to the Simmons Objection stating she has "acted diligently" in her efforts to obtain discovery, however, wholesale ignoring the Debtor has already provided most, if not all, requested information in the Data Room.

26. As of the date of this reply, notwithstanding the Debtor having established the Data Room in response to discovery requests and filings by Ms. Simmons and pursuant to order of this Court, Ms. Simmons did not and has not accessed the Data Room even after the Debtor made additional efforts to ensure her easy access to same. See attached **Exhibit A** (direct email communication on September 8, 2025, from a Debtor representative to Ms. Simmons providing all details and links to access the Data Room).

27. Accordingly, Ms. Simmons has failed to submit any admissible evidence or otherwise provide an honest reason for failing to do so.

**III. Ms. Simmons has failed to demonstrate the Debtor is not entitled to judgment as a matter of law.**

28. Ms. Simmons levies several legal arguments contesting the Debtor's entitlement to judgment as a matter of law, each of which lack merit.

29.     First, Ms. Simmons argues there is no authority to undertake the sale process in this case; however, attached to the voluntary petition filed in this case is the Written Consent of the Board of Directors of Hiawatha Manor Association, Inc., which provides the Board of Directors (i) considered the need to sell the timeshare property and (ii) authorized the retention of bankruptcy counsel and the undertaking of all acts necessary to do that. (Dkt. No. 1, at 6–7.)

30.     Second, Ms. Simmons asserts without evidence that the Debtor has omitted mandatory governance-related disclosures from its schedules. Such governance-related documentation is contained in the Data Room (see folder East Data Room > Corporate > Notices & Other Corporate Gov (board consent, resolutions, and meeting minutes)).

31.     Third, while this adversary proceeding relates only to the Hiawatha East Property, and while Ms. Simmons does not have any interest in the Hiawatha West Property, Ms. Simmons makes several arguments of no relevance regarding the transfer to the Debtor of intervals in the Hiawatha West Property. Nonetheless, the Debtor has produced documentation related to the 70-week transfer in the Data Room (see folder East Data Room > Agreements).

32.     Fourth, Ms. Simmons asserts without evidence or detail that the Debtor's own filings contain internal inconsistencies regarding control of the Debtor, which unexplained inconsistencies prevent in some unexplained way the Debtor from meeting its burden under section 363(h) of the Bankruptcy Code. While the Debtor is uncertain as to what Ms. Simmons believes is inconsistent, governance-related documentation regarding control of the Debtor is contained in the Data Room (see folder East Data Room > Corporate > Notices & Other Corporate Gov).

33.     Fifth, Ms. Simmons argues without evidence that partition in kind is practical. Such argument is without evidence or merit and is refuted by Mr. Krakovsky's affidavits.

34. Sixth, Ms. Simmons argues without evidence that the Debtor could sell its undivided interest. Such argument is without evidence or merit and is refuted by Mr. Krakovsky's affidavits.

35. Seventh, Ms. Simmons states without evidence that owners would suffer more detriment than benefit.

36. Eighth, Ms. Simmons states there is no evidence regarding the Debtor's ownership interests in the Hiawatha East Property. To the contrary, such evidence is contained in the Data Room (see folder East Data Room > Owner Data).

37. Ninth, Ms. Simmons makes unsupported assertions about the land records and the Debtor's ownership interests in the Hiawatha East Property. Copies of records and other pertinent documents are contained in the Data Room (see folder East Data Room > Owner Data).

38. The Simmons Objection fails to identify any element of 363(h) that cannot be satisfied with the evidence provided, and Ms. Simmons requests for further discovery are disingenuous given her failure to access and review any of the files already provided to *all* defendants.

39. In further support of the above, attached hereto as **Exhibit B** is a supplemental declaration from Mr. Krakovksy, outlining his extensive experience in this field and demonstrating his personal knowledge as it relates to commercial sales of timeshare units.

40. Additionally, attached hereto as **Exhibit C** is a declaration from Paul Sexton, managing director of the Debtor's commercial real estate broker, outlining HREC's efforts in the sale process and current estimated sale value of the Properties.

WHEREFORE, the Simmons Objection should be overruled, and the Motion for Summary Judgment should be granted, in accordance with the relief as specifically requested therein.

Dated: March 19, 2026

Respectfully submitted,

     */s/ Blake D. Roth*
Blake D. Roth (TN BPR No. 031499)
C. Scott Kunde (TN BPR No. 040218)
**Holland & Knight LLP**
511 Union Street, Ste. 2700
Nashville, TN 37219
Telephone:    615.244.6380
Facsimile:    615.244.6804
Email: blake.roth@hklaw.com
       scott.kunde@hklaw.com

*Attorneys for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2026, a copy of the foregoing was sent via ECF to the

U.S. Trustee and all parties registered to receive electronic notice.

      */s/ Blake D. Roth*
Blake D. Roth (TN Bar No. 031499)
C. Scott Kunde (TN Bar No. 040218)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: Blake.Roth@hklaw.com
      Scott.Kunde@hklaw.com

*Counsel for the Debtor and Debtor in Possession*

## <u>Exhibit A</u>

**Email Correspondence with Ms. Simmons**

**From:** Maxwell Lewis <Maxwell.Lewis@lemonjuice.biz>
**Date:** Monday, September 8, 2025 at 6:02 AM
**To:** lindasimmons2866@gmail.com <lindasimmons2866@gmail.com>
**Cc:** Jarvis Phillips <Jarvis.Phillips@lemonjuice.biz>
**Subject:** Hiawatha East Data Room & Information Requests

Miss Simmons -

I have attached a letter response here in connection with your previous requests in anticipation of today's meeting. It contains both information on today's meeting and information regarding how to access the Hiawatha East Bankruptcy Data Room, including information on Association Owners.

Once you have acknowledged the Bankruptcy Data Room use agreement at this URL, I will ensure you are provided credentials. Please feel free to contact me or Jarvis Phillips if you have issues accessing either the use agreement or the Data Room and I will do whatever I can to help.

**Maxwell Lewis**
Associate Legal Counsel
7380 W. Sand Lake Rd., Suite 130
Orlando, FL 32819
Office: 407-219-9117
Cell: 402-637-1768
**LemonjuiceSolutions.com**



**CONFIDENTIALITY NOTICE: This e-mail and any attachments may contain confidential information that is legally privileged and is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this information in error, please notify the sender immediately and delete these documents.**

**Exhibit B**

**Supplemental Krakovsky Declaration**

| | |
|---|---|
| In re:<br><br>HIAWATHA MANOR ASSOCIATION, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-01916<br><br>Hon. Randal S. Mashburn |
| HIAWATHA MANOR ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES H. ABERNATHY, *et al.*,<br><br>Defendants. | Adv. Pro. 2:25-ap-90051 |

**UNSWORN DECLARATION OF ALEXANDER KRAKOVSKY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND ENTRY OF SUMMARY JUDGMENT**

In accordance with 28 U.S.C. § 1746, I, Alexander Krakovsky, respectfully state the following:

1.      My name is Alexander Krakovsky, and I am an adult of sound mind.

2.      I am the Chief Executive Officer of HPP Property Services LLC, d/b/a Lemonjuice Solutions ("***Lemonjuice***"), the management company to the above-captioned debtor and debtor in possession (together, the "***Debtor***").

3.      Except as otherwise indicated, all facts set forth in this affidavit are based upon my personal knowledge, upon relevant documents and information supplied to me by people who report to me or are officers or employees with the Debtor, upon information supplied to me by the Debtor's professionals, or upon my opinion based on my experience and knowledge with respect to the Debtor's business, finances, and operations.

4.      I have worked in the timeshare industry for eleven years, including service on resort boards of directors and direct involvement in the evaluation, repositioning, and sale of legacy timeshare properties. As the Chief Executive Officer of Lemonjuice, I have overseen the completed sale of numerous whole-property timeshare resorts across multiple states, several through federal bankruptcy court proceedings substantially similar to the one before this Court. I am personally familiar with the challenges of marketing timeshare properties as individual intervals and as whole properties, and with the market conditions relevant to the valuation and sale method proposed in this case.

5.      Section 5 of that certain Amended and Restated Shared Services and Purchase Agreement, dated November 25, 2024, contains the contractual authorization for the transfer of seventy (70) timeshare intervals by Hiawatha West to the Debtor, which agreement was executed by the board president of each party, a copy of which is attached hereto as **Exhibit 1**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Dated: March 19, 2026

*s/ Alexander Krakovsky*_____
Alexander Krakovsky

2

**Exhibit 1**

# AMENDED AND RESTATED SHARED SERVICES
# AND PURCHASE AGREEMENT

This Amended and Restated Shared Services and Purchases Agreement (the "**Agreement**") is made and entered into as of November 25, 2024 (the "**Effective Date**"), by and between HIAWATHA MANOR ASSOCIATION, INC. ("**East Association**") and HIAWATHA MANOR WEST ASSOCIATION, INC. ("**West Association**").

## RECITALS

**WHEREAS**, East Association and West Association entered into that certain Shared Services Agreement dated March 18, 2023 (the "**Original Agreement**"), pursuant to which West Association agreed to provide certain shared laundry and spa facilities to East Association in exchange for a yearly fee; and

**WHEREAS**, the Original Agreement had an initial term of April 1, 2023 to March 31, 2024; and

**WHEREAS**, on February 21, 2024, the parties renewed the Original Agreement for an additional year on the same terms and conditions, with the yearly fee increased to $39,140.00 (the "**Renewed Agreement**"); and

**WHEREAS**, except as set forth herein, the parties recognize the Renewed Agreement is the only agreement in place and effective with respect to the services provided for therein; and

**WHEREAS**, the parties recognize the existence of charges as presented by Crown Resorts Management LLC ("**Crown**") to East Association on behalf of West Association, the validity of which is disputed by East Association, and as of the Effective Date, Crown has not supplied all requested information pursuant to the Renewed Agreement; and

**WHEREAS**, the parties now desire to amend and restate the Renewed Agreement as of the Effective Date in accordance with the terms hereof.

**NOW THEREFORE**, for consideration paid, the receipt and sufficiency which is hereby acknowledged, the parties agree as follows:

1. <u>Expense Allocation</u>. Beginning on the Effective Date, all shared expenses, including but not limited to cleaning, check-in, and maintenance services, shall be allocated proportionately to the Association where such expenses occur. Specifically: (a) Costs for cleanings (including deep cleans) shall be billed to the Association where the cleaning took place based on the number of cleans performed; (b) Payroll expenses, as provided and required under the management agreement in full force and effect for East Association, for housekeeping, RCI exchange and deposit scheduling, and reservations and exchanges servicing, shall be allocated to the Association where the underlying work occurred. All other shared expenses shall be allocated equitably based on which Association benefited from or necessitated such expenses. The parties shall use best efforts to determine where use was incurred.

2.  <u>Spa and Laundry Services</u>. In lieu of paying any fees to West Association for use of the spa and laundry facilities, East Association shall provide all employee and payroll services required to staff and operate such facilities. This provision of labor by East Association shall be considered full satisfaction of East Association's obligations regarding the spa and laundry facilities under the Original Agreement. In addition to providing labor, East Association shall pay the lease equipment costs on all commercial equipment in the laundry and associated facilities as well as all utilities related to operating.

3.  <u>Reporting and Transparency</u>. Each Association and/or the management firm of either or both Associations, in accordance with the powers and duties of that management firm, as specified in their respective management agreements, shall prepare and submit to the other a monthly package detailing all financial activity related to shared expenses, including supporting documentation as reasonably requested. East Association shall oversee the receipt of hourly reports from both Associations and review the monthly financial packages to ensure accuracy and transparency. The Associations shall cooperate in good faith to implement any additional reporting or transparency measures reasonably requested by East Association or its management firm. The Associations shall instruct their respective management companies to handle reporting and transparency subject to those requests.

4.  <u>Reimbursement of Prior Obligations</u>. East Association will use best efforts to resolve outstanding balances purportedly owed to West Association under the Renewed Agreement, subject to West Association providing verifiable detail of work provided, per unit, in addition to the removal of fees not explicitly allowed under the Renewed Agreement. Upon mutual agreement of the verifiable outstanding balances, West Association may present invoices for reasonable operations expenses of West Association to East Association for payment, pending the reasonable availability of East Association funds, until the mutually agreed outstanding expenses are satisfied.

5.  <u>Transfer of Intervals</u>. For $10 and other good and valuable consideration, and the payment of related maintenance fee obligations and assessments commencing as of April 1, 2025, West Association agrees to transfer and convey to East Association seventy (70) timeshare intervals owned by West Association (the "**West Weeks**"); one in each of the 70 units that are part of the West Association. The form of deed to be utilized for such purposes shall be reasonably determined by East Association. All costs and expenses associated with deed preparation and recording shall be borne by East Association. The specific timeshare intervals to be transferred shall also be reasonably determined by West Association. West Association covenants and agrees that, if East Association determines that there is a chain of title issue that creates a cloud on the title of any of the West Weeks conveyed to East Association, West Association shall provide replacement timeshare weeks to resolve the title defect issue and West Association shall timely execute all documentation that East Association shall require to effectuate such purposes.

6.  <u>Vehicles</u>. East Association shall be allowed to use any vehicle owned by either East Association or West Association at no additional charge or accounting of use between the Associations during the term of this Agreement. The insurance and registration/tags for the vehicles shall be paid by the registered owner. Regular maintenance for the vehicles will be the responsibility of the user based on mileage.

7. <u>Termination and Amendment</u>. This Agreement supersedes and replaces all prior agreements between the parties, including but not limited to the Original Agreement and the Renewed Agreement, which are hereby terminated as of the Effective Date. This Agreement may only be modified by a writing signed by both parties.

8. <u>Term</u>. The term of this Agreement shall begin on the Effective Date and shall terminate on April 1, 2025, unless earlier terminated pursuant to the terms of this Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Amended and Restated Shared Services and Purchases Agreement as of the Effective Date.

HIAWATHA MANOR ASSOCIATION, INC.,
a Tennessee non-profit corporation

By: *Archie Doby*
Archie Doby (Nov 25, 2024 13:09 CST)
        Archie Doby
        President

HIAWATHA MANOR WEST ASSOCIATION, INC.,
a Tennessee non-profit corporation

By: *Gordon Bentley*
Gordon Bentley (Nov 25, 2024 14:43 EST)
        Gordon Bently
        President

# Hiawatha Shared Services Agreement 11.25.24 - unsigned

Final Audit Report                                          2024-11-25

| | |
|---|---|
| Created: | 2024-11-25 |
| By: | Jaclyn Addeo (jaclyn.addeo@lemonjuice.biz) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAMYfK5zoQAfh7SCgKVe15ILSSUuxJtfuZ |

## "Hiawatha Shared Services Agreement 11.25.24 - unsigned" History

🗎 Document created by Jaclyn Addeo (jaclyn.addeo@lemonjuice.biz)
2024-11-25 - 6:59:13 PM GMT

✉ Document emailed to addoby@benlomand.net for signature
2024-11-25 - 7:00:06 PM GMT

🗎 Email viewed by addoby@benlomand.net
2024-11-25 - 7:05:06 PM GMT

🖊 Signer addoby@benlomand.net entered name at signing as Archie Doby
2024-11-25 - 7:09:43 PM GMT

🖊 Document e-signed by Archie Doby (addoby@benlomand.net)
Signature Date: 2024-11-25 - 7:09:45 PM GMT - Time Source: server

✉ Document emailed to Renee Bentley (rgb4@usit.net) for signature
2024-11-25 - 7:09:47 PM GMT

🗎 Email viewed by Renee Bentley (rgb4@usit.net)
2024-11-25 - 7:32:11 PM GMT

🖊 Signer Renee Bentley (rgb4@usit.net) entered name at signing as Gordon Bentley
2024-11-25 - 7:43:07 PM GMT

🖊 Document e-signed by Gordon Bentley (rgb4@usit.net)
Signature Date: 2024-11-25 - 7:43:09 PM GMT - Time Source: server

✅ Agreement completed.
2024-11-25 - 7:43:09 PM GMT

![Adobe Acrobat Sign]

**Exhibit C**

**Paul Sexton Declaration**

| | |
|---|---|
| In re:<br><br>HIAWATHA MANOR ASSOCIATION, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-01916<br><br>Hon. Randal S. Mashburn |
| HIAWATHA MANOR ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES H. ABERNATHY, *et al.*,<br><br>Defendants. | Adv. Pro. 2:25-ap-90051 |

### UNSWORN DECLARATION OF PAUL SEXTON IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND ENTRY OF SUMMARY JUDGMENT

In accordance with 28 U.S.C. § 1746, I, Paul Sexton, respectfully state the following:

1. My name is Paul Sexton, and I am an adult of sound mind.

2. I am the Managing Director of D&C Hospitality Investments, LLC, a Colorado limited liability company, d/b/a HREC Investment Advisors ("***HREC***"), the commercial real estate broker to the above-captioned debtor and debtor in possession (together, the "***Debtor***"), as authorized by this Court's *Order Authorizing Employment of Broker* (Dkt. No. 129).

3. Except as otherwise indicated, all facts set forth in this affidavit are based upon my personal knowledge, upon relevant documents and information supplied to me by people who report to me or are officers or employees with HREC, upon information supplied to me by the HREC's professionals, or upon my opinion based on my experience and knowledge with respect to the Debtor's properties and real estate market generally.

4. The Debtor is a Tennessee non-profit corporation and the condominium owners association of that certain 47-unit (each a "*Unit*" and collectively, the "*Units*") development located at 8005 Cherokee Trail, Crossville, Tennessee 38572, which is commonly known as the Hiawatha Manor Resort (the "*Hiawatha East Property*").

5. The Debtor's "sister" association, Hiawatha Manor West Association, Inc. ("*Hiawatha West*"), is a Tennessee not-for-profit corporation that holds and administers timeshare interests in real property known as "Hiawatha Manor West at Lake Tansi Village," located in or around 8007 Cherokee Trail, Crossville, Tennessee 38572 (the "*Hiawatha West Property*", together with the Hiawatha East Property, collectively, the "*Properties*").

6. The Debtor engaged HREC to assist in marketing the Properties. HREC is one of the largest hospitality-only commercial real estate brokerage in the nation with 22 offices across the country and over 30 brokers.

7. HREC is in the process of implementing a broad marketing campaign designed to attract a large and diverse population of potential bidders. The marketing campaign included the following efforts: (a) preparation and distribution of an offering memorandum; (b) establishment of an electronic data room containing title commitments, surveys, financial statements, and operating information; (c) targeted email distribution to HREC's national hospitality investor database; (d) coordinated with Commercial Real Estate Exchange, Inc. ("*CREXI*") to ensure further distribution to CREXI's database of real estate investors, (e) direct outreach by HREC brokers to prospective purchasers; and (f) coordination of property tours and management calls with interested parties.

8. Because comparable sales are limited, HREC's current conservative estimate is that the Properties will bring approximately $5.0 million based on the number of units and the local

2

market.

9.      Given the fractional ownership structure of the Units, it would be impracticable to partition the Properties between the interests of the Debtor and the co-owners and the current estimated sale price for the Properties as a whole far exceeds the proportional share of what the Debtor would be able to obtain if it was forced to sell its Units separately from the entire Properties.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Dated: March 19, 2026

*s/ Paul Sexton*_____
Paul Sexton

3